Good morning, Your Honors, and may it please the Court. My name is Ellie Ritter, and my co-counsel, Mary Trotter, and I are both Pepperdine Law students appearing on behalf of Appellant Sandy Eulitt. Before I begin, I'd like to reserve five minutes for my co-counsel, Ms. Trotter, to give rebuttal. Thank you. At bottom, this case is about the City of San Diego's ongoing enforcement of the six-month rule, which is a local rule that requires RV park landlords to evict their tenants every six months without exception. The City has enforced this rule for decades in state court litigation and in other enforcement actions brought against local RV parks. What – maybe we should talk about the elephant in the room here. Does it matter that the rule is not an ordinance that's currently in effect or has been in effect for any of the enforcement actions alleged? No, Your Honor, it doesn't. So the apparent repeal of the ordinance doesn't change the mootness conclusion here, and here's why. It is ordinarily true that the repeal of an ordinance can render a case moot, but as this was recently explained in McDonald v. Lawson, that principle only holds where there is no possibility that the government will not continue to enforce the ordinance. Well, what about the perspective relief? You concede that the perspective relief is now off the table? No, Your Honor, it's not. And again, it's because of this ongoing enforcement of the ordinance and the fact that this enforcement of the ordinance has been repeated for decades. And by Ms. Hewlett's complaint, allegations continues to occur to this day. I mean, it's an extraordinary situation because, you know, apparently for some period of time they've enforced an ordinance that was repealed decades ago, and now that you've called them out on it, they – whoops, it doesn't – it's not actually on the books. Now that they've acknowledged that it's gone, it seems unlikely that they're going to have the temerity after telling this court that it doesn't exist to go ahead and enforce it. Well, Your Honor, it is quite perplexing that the city has enforced this ordinance for decades despite the fact that it was apparently repealed 70 years ago. And the fact that the city has continued to enforce it during that time suggests that there's no clear indication that they're planning to stop. And the burden is on the city to show that, and it's a heavy burden to carry. The court has always held that the burden to show that that type of conduct won't be repeated is on the government. Is there any suggestion or any indication that there may be some other source for a six-month rule that might be applicable other than this particular ordinance that had been invoked here? Sure, Your Honor. So there's no other clear rule or policy that's on the books absent that ordinance. But the fact- That we know of. That we know of, exactly. But the fact remains that the city's enforcing a policy. And regardless of whatever its source may be, this case isn't ultimately about the ordinance. That's what Ms. Hewlett had originally briefed because that was all she knew about. But the case ultimately is about the six-month rule, whatever its source may be, whatever law is on the books. And the fact that the city has continued to enforce that policy, that conduct, is itself enough to keep this case alive. So the case isn't moot, notwithstanding. Which portion of the case? I guess, for example, there's a preemption claim. It's hard to imagine that there could be federal preemption of a nonexistent ordinance. Is there any damages claim related to the preemption claim? Yes, Your Honor. So first and foremost, there are damages claims for that. And also, I'll add, as to the preemption point, it is, in a sense, correct that preemption might seem less apt of a fit now that we know that this case isn't really about an ordinance on the books, but rather about a policy. But there's nothing about preemption as a theoretical matter that prevents it from applying with equal force to a policy or practice. And the way that it would work is that the city's enforcement of this rule is still putting landlords in the type of impossible position that preemption is designed to prevent against or to remedy. Has it been, so there are a couple of different claims, the reasonable accommodation, the disparate impact claims under the disabilities statutes. What are the allegations, and this is a motion to dismiss, so we're not looking past that to any record, what allegations are there that it's been enforced in any other circumstance other than the one presented with Ms. Hewlett? So your honor, Ms. Hewlett's complaint in her operative complaint, which can be found where I'm referencing at 3 ER 323, she gives a timeline of enforcement at Marina, which is another RV park besides Coastal, where we have the enforcement letter, the permanent injunction that the city got against her former landlord there to permanently enforce the six month rule. And those allegations at 3 ER 323 detail years of enforcement at Marina. Hewlett alleges that the city enforced it in 2009, 2010, 2011, all the way up through 2013. So what's the, I believe both of these statutes have some state of mind type requirements, I think particularly with respect to the reasonable accommodation. What's the best allegation you'd point to that the city knew that it was refusing a reasonable accommodation to Ms. Hewlett? So also in Hewlett's third amended complaint at 3 ER 326, Hewlett alleges that, quote, discovery is expected to show that Mr. Spears, who was Hewlett's former landlord's park manager, gave the city some of her tenant information. And then the next line is that from that information, the city knew or reasonably should have known of her disability and reasonable accommodation. Why do you expect that discovery would show that, and where in the complaint does it explain that? Sure, so two things. First, as far as other allegations to sort of support that claim that Hewlett makes there, in the record, this can be found at 2 ER 77. Hewlett got a letter from her former landlord that gave her an accommodation, and it explicitly said that the accommodation was pursuant to the Americans with Disabilities Act. And Hewlett alleges that that letter was placed in her tenant file. So when Hewlett, in her complaint, alleges that her tenant information was given to the city, it's a reasonable inference that that information contained that letter. Did she ask the landlord what the tenant information was? Because the landlord seemed cooperative, and that could have been obtained and put into the complaint. So Hewlett doesn't specifically allege in her complaint whether her landlord told her what that tenant information said. But it is a reasonable inference from that allegation, coupled with this letter giving her a reasonable accommodation and the allegations that that was in her file, that the tenant And to sort of reiterate on that point, too, the pleading standard here at a motion to dismiss, especially for a pro se complaint, is a liberal standard. And reasonable inferences not only have to be drawn in the light most favorable to Hewlett, but also have to be drawn more liberally in general. And another point on that matter is that, as for that allegation Something that could be clarified if she were given leave to replead? Absolutely, Your Honor. So that point is one that would be perfect for amendment of this complaint, if Hewlett were given leave to amend. And there's also other facts about what's happening around this time. At the time that this tenant information was given to the city, Hewlett alleges that the city was going through a back and forth with her landlord about the tenants that were remaining there longer than six months in violation of the six month rule. Months after this tenant information was given to the city, the city immediately sent that 2017 enforcement letter that not only explicitly referenced the ordinance, but also told Hewlett's to take all legal means necessary to remove tenants who were violating the six month rule. How is that a refusal to reasonably accommodate if the city comes in and, as alleged or as plausibly inferred, tells the park that they need to evict the tenants? So the way that it amounts to a failure to accommodate is that the city is placing a That itself is a failure to accommodate. The city is saying, landlords, you can't give any accommodations, which means that the landlords have to deny or revoke all the accommodations. I know councils sometimes don't love this question, but what's your best case for that? So the two best cases would be out of the Ninth Circuit, McGarry versus City of Portland, and also, I think aptly, Australis out of the First Circuit. There, in Australis specifically, it was a factual scenario very similar to this one, where landlords were actually the ones being sued, but they had to plead preemption. They were forced to decline or revoke accommodations in light of a city ordinance. And the court there held essentially that the ordinance itself, by creating this categorical bar, amounted to a failure to accommodate. And with that, I'll preserve the rest of my time for rebuttal. Thank you, Your Honor. All right. Thank you. We'll hear now from Mr. Krentz. Yes, Your Honor. Good morning, Your Honors, and may it please the court. Tyler Krentz on behalf of the City of San Diego. The court should affirm the dismissal. Plaintiff draws a line between private business conduct and a city ordinance. Well, can we start with how is it remotely possible that the City of San Diego enforces a phantom ordinance, which hasn't existed for decades, and enforces it not only here, but we have evidence in the record, it's obtained judgments under a nonexistent ordinance. How is this possible? How is it possible that your laws are apparently such a mess that you don't even know what they are? Sure. So two points of response, Your Honor. First, the practical response. This ordinance was an uncodified wartime ordinance that predates the city's municipal code. So before the city had a codified municipal code, which started in the 1950s, ordinances were simply put in historical ordinance books. And when the city adopted its municipal code, it then had a set of laws with legislative history that overruled and repealed any ordinance that conflicted with it. But there's a problem with any uncodified ordinance, because simply knowing that it's not in the current municipal code doesn't give you that final link. You have to look at the uncodified ordinance, and then find out. Maybe it would have behooved the city, knowing that the problem you just described exists, before you haul out one of these older ones, you'd better really make sure that it exists before you start putting the coercive power of the state against people based on something that doesn't exist. Well, that leads me to the second point, Your Honor, which is I think that the allegations in the complaint do not support the idea that the city has been wielding its coercive power in any more than a single instance. We just have the judgment from the prior case, and then we have the allegation and the complaint with respect to 2017 in this case. That's at least two data points, right? Really one, Your Honor. The stipulated judgment that was entered was specific to the Coastal Trailer Villa property, a single location. And as the judicially noticeable documents show, there's prior litigation that made that It didn't fall under a mobile home park. It didn't fall under an RV park. The state laws that apply in this area as well, then, don't seem to apply. The city's municipal code has defined terms that didn't seem to apply. And so that one lawsuit, Your Honor, from 2000, I think, in some ways was seeking, I think, to clarify what applied. Why shouldn't we just vacate this whole thing and ship it back? Because I've never seen something like this where the facts and understanding of the case just completely changed on appeal, where the city comes in with a whole different approach. The district court had no idea about any of this. We're now being asked to sort of draw inferences on the fly. That's not our job. Maybe we'll just ship this all back, but district court can sort this all out and figure out what's really going on here. But I don't understand why we should do anything with this. Well, Your Honor, I think to the extent that this belated information prejudiced any party, it frankly prejudiced the city. Because this case was litigated on terms far more favorable to plaintiff. And therefore, the underlying judgment dismissing this case is still valid, and plaintiff can't show any prejudice. Well, we're dealing here, Mr. Krentz, with a pro se civil rights plaintiff who actually pleaded out a pretty good complaint for pro se. And, of course, it wasn't until the second round of briefing and the answer brief where the city brought this up. So I guess prejudice or not, if you believe, if the city's position is that this case has changed completely, whether to its prejudice or not, why is that not then a reason to go with Judge Collins' suggestion that we send it back so that everyone can find their footing, including the district court who had none of this before them? It would be an idle act, Your Honor. The case fails for the reasons already outlined by the district court. Even if, even putting aside this in some ways, the other issues that the court has already acknowledged or asked questions about, for example, even though she was proceeding pro se, she never pled any facts to show the city knew or reasonably should have known about the reasonable accommodation. Well, where did that letter come from then? What's the city doing with a letter that has a list of tenants that include her? Well, the letter, Your Honor, I want to separate out, the letter identifies five tenants, including her, but it doesn't talk about disability. It doesn't talk about reasonable accommodations. It simply notes that some tenants are overstaying the six-month policy, which... What else would she have had to allege then to get to the point of discovery where she and the court could get answers to these questions? Not to be pithy, Your Honor, but a fact. I think her allegation is the essence of the threadbare recital of an element under Iqbal. Well, she says that the tenant file was given by the landlord, and she says that the tenant file contained information that she was given an accommodation. So from those two facts, she says a plausible inference can be drawn that the city was aware of the accommodation and therefore the disability. Why isn't that a plausible inference under Iqbal? Well, the letter, Your Honor, that you're referencing, or that my friend referenced, comes not from the Third Amendment complaint, but from a different part of the record where there was earlier briefing. It's not a factual allegation. The key... But that could be fixed by amendment, right? Well, plaintiff hasn't sought leave to amend as part of this appeal, and the district court already granted leave to amend. I mean, this is a pro se. The case has become something of a mess, and maybe an opportunity to fix it. I mean, the other thing is, maybe she could add a due process claim, because it seems to me to violate due process for the city to enforce an ordinance that doesn't exist. That seems sort of fundamental. Maybe that would get added. So I'm not sure that the fact that the pro se didn't technically ask for amendment is really controlling here. Well, not the pro se, Your Honor. I'm saying the briefing on appeal hasn't made an argument that leave to amend should have been granted. The reply brief? Nobody briefed certainly couldn't do that, because they didn't know the whole case was going to get changed. Well, then I think just focusing on the trial court, Your Honor, the district court already granted three opportunities for leave to amend. And so at that point, the district court's discretion becomes particularly broad, in  been granted. And the court, multiple times, in its orders, advised plaintiff, even though she was proceeding pro se, that this key fact needed to be in the complaint. And so at the third time, I think it's fair to say that she still had not been able to do it. I guess I'm trying to figure out, again, how she gets that additional information when she's dealing with a government that doesn't even know what its own law is. She's supposed to, there may or may not be a paper trail, but typically we don't expect litigants to engage in pre-complaint discovery to try to figure that all out. That's true. Although, of course, the Public Records Act would mean that she could have requested any of that information from the city. Well, why would that include, I mean, I think the inference here is that if they were, if have further support and paint the city as the bad guy here, in terms of, you know, those discussions aren't likely to necessarily be recorded. She's provided ample evidence in terms of the past enforcement history of that. Why is that enough, even just as to one park? Well, I want to, I think this goes back to the beginning of the argument, but I need to push back on some of the premises of these questions. There is no ample enforcement history here. There is a single stipulated judgment from the year 2000 that reimposed specific requirements as to this one property, which is now closed for closing any prospective relief. And then a 2017 letter that is, in effect, no longer really enforcing this prior ordinance, but is now enforcing this stipulated judgment. So there's no other than those two instances, which is really one linked by essentially this new stipulated judgment. Plaintiff has not alleged any other instances of enforcement at any other areas. Why wouldn't that be enough to find a refusal of a reasonable accommodation? If the city does it once, and if we draw these inferences, why wouldn't that be enough to state a claim? Because Your Honor, simply trying to enforce a generally applicable law, a six-month rule, without regard to someone's disability. In other words, if they haven't requested the accommodation. Well, that goes back to the knowledge question, but let's keep those separate. You're also saying that it's not enough, that there's just been one instance of enforcement. I'm just pointing out, Your Honor, that I think Your Honor's question had asked, essentially, why shouldn't she be able to get a break because of the city's repeated enforcement? And I need to push back on that premise of repeated enforcement. But why should she not get a break? I can answer more directly as well. In addition to having multiple opportunities for leave to amend, she also could have, in any of those opportunities for leave to amend, simply allege that the tenant information included a reasonable, her disability status. Or at any point, she could have directly communicated with the city and told the city, I would like to request a reasonable accommodation. Because under the city's current municipal code, that this amendment was put in place in 2005, the municipal code allows for reasonable accommodations from plaintiffs. And that may be kind of legally a tricky question. What's your argument that she was required to request, after she'd received an accommodation, allegedly, from her landlord, that she was required then to separately know about and request from the city a reasonable accommodation from the six-month rule? Well, because her landlord was changing. So the allegations on, I think it's pages, I think it's 323 and 324, talk about this pattern where she's changing RV parks based on the six-month rule that the private parks have imposed. And then she's changing also the ownership. So at Coastal Trailer Villa, she had gotten a reasonable accommodation request, but then the ownership changed, and it seemed as if the new ownership took a more aggressive stance in denying the reasonable accommodations. So at that point, Your Honor, once her park ownership has now denied reasonable accommodations, it would make sense, especially if they're telling her the good cause for eviction is you violated the stipulated judgment, for her to go get safe harbor from the city. Or to bring this, to go back to the landlord when they've denied the request and say, why are you denying the request, or what's the basis for it, and then go to the city once she finds, if she thinks it's a city order. But if the city is the cause of the failure to accommodate all along, why would the change in ownership require to kind of re-up her request? Well, the city's not the cause, I think, because that goes back to the fact that the city's not. The city's enforcing the stipulated judgment, but of course the stipulated judgment is still subject to the FHA, the ADA, and the reasonable accommodation process. At the time the city was entering into the stipulated judgment, back in 2000, Ms. Hewlett was not living at the property. She had not entered into this picture. So it's impossible for the city's actions a decade before she ever became a tenant to have discriminated or erected a systemic barrier of any kind against Mrs. Hewlett. I think on that point about enforcement, I want to point out, I've made a couple strong declarative statements here today saying this has only been enforced at one location, effectively one time, through this stipulated judgment. And I want to point out where I'm getting that information from. So specifically, defendant, in her own allegations, at page 336, alleges that the city omits performing the act of enforcing the six-month rule on Santa Fe RV Park and Morena Mobile Village or MMV RV Park occupants when CTV, Coastal Trailer Villa, RV occupants were held to the letter of the law. So plaintiff's own factual allegations shows the city is treating Coastal Trailer Villa one way and Morena Mobile Village a different way. And that's critical because it establishes why I think the record of enforcement that's actually in the allegations and the complaint does not establish a repeated instances of the city flagrantly enforcing or exercising its power against multiple areas. And on 323 as well, the park manager, she's elected... Does this go to both the reasonable accommodation and the disparate impact claims or just the disparate impact claim? I think it primarily goes to disparate impact, Your Honor, because disparate impact, as this court explained recently, and I think it's pronounced PAYAN or P-A-Y-A-N, a disparate impact claim is essentially a group claim. It's where systemic barriers or a longer policy have imposed a significant burden on a disabled population. Could that disparate impact occur in two parts? Not based on these facts, but... Theoretically? I think, Your Honor, the other point is, and this was what the court tried to, I think, separate out in PAYAN, the disparate impact claim requires a group. And here we only have allegations about a single park and a single group of people. Well, but that's a group. So why could a disparate impact claim not apply to... There are a dozen tenants and three quarters of them are disabled. And all of the other tenants who have previously voluntarily agreed are not. Why would that not state a disparate impact claim even as to one park? Some of this creates a bit of a line drawing problem, Your Honor. But I don't think the court, and I'll do my best to answer that question, but I don't think the court actually has to answer it here. Her allegations are that five people were staying beyond the six month time, but those five people were not all disabled. She appears to be the only one that is allegedly disabled. And so it's really a class of one, even though there's five names listed. Then I think that, just to engage with Your Honors, what I would call a hypothetical, although maybe my friends disagree. I think there is a point where, even at one location, a large enough group, of course, could rise to the level of a disparate impact claim, but we don't have those facts here. Unless the court has any other questions, the court's reaffirmed. Thank you, counsel. Thank you, Your Honor. We will hear now from Ms. Trotter on rebuttal. You may proceed.  Thank you, Your Honors. Mary Trotter on rebuttal on behalf of appellant Sandy Ulett. I'd like to begin by addressing the city's assertion that the disabled tenants that were named in the 2017 enforcement letter were not known to be disabled. Ulett alleges at 2ER97 that three of these tenants, including herself, were also disabled. Mark Joan Adelman and Robbie Robinson were also known to be disabled, and she had listed that in her complaint. With regards to turning to the accommodations code that the city brings up for the first time on appeal, this appears to just be a merits-based offense that the city is bringing up for the first time on appeal, and there's just no way to ascertain, based on the text of the code, that it, in fact, applies to Ulett and her RV. It's unclear if development applies to recreational vehicles, and it's our position that if this accommodations code was so easily and readily able to be used, that Ulett probably would have gotten an accommodation from the city beforehand. One of her many landlords would have known about it. It's not her duty when she is—her landlord is acting as a middleman between her and the one telling her landlord that they need to enforce the six-month rule. So there's no—the city has not met their burden that they—that Ulett has to actually go to the city in order to get this accommodation. Does the landlord have to do that to state the claim? Can you repeat the question? Request an accommodation? I mean, so we're talking about—there's the question of knowledge, which may or may not be separate from this question of what it takes to establish a refusal to accommodate. If—I think it's established Ms. Ulett didn't ask the city for an accommodation. Did the landlord have to ask the city for an accommodation? No, Your Honor. The city—the landlords would have known of this accommodations code if it was readily used and available. They apparently did not know about the code because they were writing accommodations for their tenants, for Ulett specifically, in pursuant to the Americans with Disabilities Act. At 2 ER 77 in 2011, her coastal landlord gave her an accommodation that references the Americans with Disabilities Act. So if there was a code that they could have gotten an accommodation through to the city, it's reasonable that they would have known about it or that the city would have told her landlords about it in 2017 when there was a back and forth between the city and her landlord, or that the city would have brought this at the district court at the proceedings below. Because it's brought it for the first time on appeal, there's just no way to assert in that it actually applies. And then with regard to the notice requirement, the city asserts that the letter is not in the complaint, but it is attached to the complaint. And it is—she references the 2017 letter at 3 ER 327 at 161. She references that the city sent this letter in 2017, and this letter was the reason that her landlord ended up evicting all of these tenants. And on that same matter of the lack of enforcement that the city is alleging, there's no private RV landlord practice based on these allegations. Hewlett also alleges in her third amended complaint that her landlord's attorney told her attorney that was defending her unlawful detainer action. In 2018, that they didn't really care about who was living in the RV park past six months. But for the city's enforcement, they would have let people live there past six months. Do you have any data points other than the 2000 judgment and the 2017 allegation that the six-month ordinance was being enforced against anyone because your opponent contends that's really one incident, and then the complaint says it wasn't being enforced against the other parks, so there really is nothing other than this essentially one thing and there isn't much of a practice. What's your response to that argument? Well, two points, Your Honor. They aren't one instance. There are two separate instances. There was a 2000 lawsuit that had a stipulated judgment and a permanent injunction. And then the city uses that in 2017 to point to their precedent. The point, the purpose of a permanent injunction is that it has a permanent effect. There doesn't need to be more than that to show that it has this permanent effect and that landlords have to abide by it. And in terms of other enforcement, Hewlett alleges, I see that my time is up, if I could briefly answer. If I can answer your question, you may proceed. She alleges that in 2009, 2010, 2011, and 2012, that her landlords at Marina were also enforcing the six-month rule. Is that in a specific paragraph in the complaint or? Yes, it's at 3 ER 323 and 3 ER 324. And the city asserts that this isn't the city themselves enforcing it, but Hewlett's allegations is that it is. And at this, because this is a 12 v. 6 motion, we must accept those allegations as true at this time. All right. Thank you. The cases are to be submitted. I want to thank counsel for both sides for your very helpful presentations. We very much appreciate your efforts in this case.
judges: COLLINS, THOMAS, JOHNSTONE